UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

              v.                      CRIMINAL NO. 4:97-cr-41-1

NATHANIEL JOHN LITTLE,

          Defendant.

## OPINION

This matter comes before the court on Defendant Nathaniel John Little's _pro se_ Motion for Compassionate Release ("Motion"). ECF No. 270. Defendant's Motion was received on November 26, 2024. _Id._ In his Motion, Defendant asserts that his unusually long sentence, rehabilitation, youth at the time of the offense, and low risk for recidivism all constitute "extraordinary and compelling" circumstances justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(a). _Id._ at 6, 9, 14, 15.

The United States does not oppose Defendant's Motion. ECF No. 279. In fact, in its Response filed on March 3, 2025, the United States asserts that the circumstances outlined by Defendant "collectively qualify as an 'extraordinary and compelling reason' justifying his release." _Id._ at 15. However, it notes that Defendant must "serve at least 480 months" and is not eligible for immediate release, due to the mandatory minimum terms in this case. _Id._ at 26. The United States also requested that Probation file

an updated presentence investigation report ("PSR") for Defendant. Id.  In his Reply, received March 17, 2025, Defendant concurred with the United States and amended his requested relief to a term of four hundred eighty (480) months incarceration.  ECF No. 283.[1] On March 21, 2025, the court directed Probation to file an updated PSR for Defendant.  ECF No. 284.  Defendant's updated PSR was filed on March 26, 2025, ECF No. 285; it was refiled on April 25, 2025, correcting a minor error, ECF No. 290.

Defendant has served more than twenty-seven (27) years of his sentence of Life plus seven hundred eighty (780) months imprisonment.  See ECF No. 41 at 3.  Defendant comes to the court "for virtually the first time in 23 years" with the instant Motion. ECF No. 279 at 1.  For the reasons explained below, the court **GRANTS** Defendant's Motion and **REDUCES** his sentence of Life plus seven hundred eighty (780) months imprisonment to four hundred eighty (480) months imprisonment.

## I. BACKGROUND

Between 1996 and January 1997, Defendant participated in a scheme to distribute large quantities of crack cocaine, marijuana and heroin in the Eastern District of Virginia.  ECF No. 290 at 17 (PSR).  Defendant "used intimidation and threats to protect his territory . . . . [and] had over 13 people working for him,

---

[1] Defendant initially sought a sentence reduction to four hundred twenty-five (425) months incarceration.  ECF No. 270 at 20.

including a juvenile." Id. at 12. Throughout the scheme, Defendant's actions escalated, culminating in a drive-by shooting, which left the victim with "permanent speech problems," and the murder of Cleveland Christian. Id. at 15-16. Defendant was twenty-three (23) and twenty-four (24) at the time of the offenses. Id. at 3. He was arrested in January 1997. Id. at 24.

On October 24, 1997, a federal jury found Defendant guilty of twenty (20) counts of the thirty-five (35) count indictment. ECF No. 36. The court issued its Judgment on January 27, 1998, sentencing Defendant on nineteen (19) of those counts:[2]

| Count 2 | Conducting a continuing criminal enterprise |
| Count 3 | Murder in furtherance of a continuing criminal enterprise |
| Count 7 Count 11 Count 12 Count 13 Count 15 Count 23 | Possession of "crack" cocaine with intent to distribute |
| Count 8 | Distribution of heroin |
| Count 14 Count 20 Count 21 | Distribution of "crack" cocaine |
| Count 25 | Possession of "crack" cocaine with intent to distribute |
| Count 26 | Employment and use of a person under 18 years of age |

---

[2] Count 1 was vacated, as it was a "lesser included offense of count 2." ECF No. 41 at 1.

| Count 31<br>Count 34 | Use and carry a firearm during and in relation to a drug trafficking crime |
| Count 32<br>Count 35 | Use and carry a firearm in a crime of violence and during and in relation to a drug trafficking crime |
| Count 33 | Drive-by shooting |

ECF No. 41 at 1-2 (Judgment).

On Counts 2 and 3, Defendant was sentenced to Life imprisonment; on Counts 7, 8, 11, 12, 13, 15, 23, and 26, Defendant was sentenced to four hundred eighty (480) months imprisonment; on Counts 14, 20, 21, and 25, Defendant was sentenced to two hundred forty (240) months imprisonment; and on Count 33, Defendant was sentenced to three hundred (300) months imprisonment, all to be served concurrently. Id. at 3. In addition, Defendant was sentenced to terms of sixty (60) months imprisonment on Count 31 and two hundred forty (240) months imprisonment each on Counts 32, 34, and 35, each to be served consecutively to all other Counts. Id. Thus, in total, Defendant received Life plus seven hundred eighty (780) months imprisonment. Id. Since sentencing, Defendant has been incarcerated for over twenty-seven (27) years.

Defendant's previous post-conviction motions for relief consist of one habeas motion under 28 U.S.C. § 2255, filed on August 6, 2001, shortly after his initial sentence and appeal, and one "confused, pro se § 2244 motion for a second/successive § 2255 motion that appears to be generated from a jailhouse-lawyer-style

4

template," ECF No. 279 at 20, filed on June 20, 2014.  ECF Nos. 65 (Habeas Motion), 134 (Second Motion).  Defendant's habeas motion was denied as untimely on January 29, 2002.  ECF No. 72.  His second motion was denied as inapplicable on June 27, 2014. ECF No. 135.  As the United States notes, unlike many defendants, Defendant has not filed "motion upon motion . . . seeking to escape the consequences of [his] decisions."  ECF No. 279 at 20.  Nor did Defendant seek compassionate release due to the COVID-19 global pandemic.  Id.  As such, Defendant comes to the court "for virtually the first time in 23 years" with the instant Motion. Id. at 1.

Again, Defendant seeks compassionate release due to his unusually long sentence, rehabilitation, youth at the time of the offense, and low risk for recidivism.  Id. at 6, 9, 14, 15.  He alleges that these factors constitute extraordinary and compelling circumstances, and that a sentence reduction is warranted after considering these circumstances and the sentencing factors of 18 U.S.C. § 3553(a).  Id. at 21.  Defendant has served more than twenty-seven (27) years in federal custody.  He requests that the court reduce his sentence to four hundred eighty (480) months imprisonment.  ECF No. 283.  Such a reduced sentence would result in Defendant's continued incarceration for approximately another decade.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The court may modify a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before the court may consider such a motion, however, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit clarified that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021). The exhaustion requirement "is a non-jurisdictional claim-processing rule," which "may be waived or forfeited." Id. at 130.

On August 10, 2024, Defendant submitted a request for compassionate release to the warden of his institution. ECF No. 270-1 at 9. No response from the warden was provided to the court. Because more than thirty (30) days have elapsed since Defendant submitted the request, the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is satisfied. The United States does not contest that Defendant has satisfied this requirement.

6

### III. MERITS

Evaluating a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is a two-step inquiry. First, the court may reduce a defendant's sentence for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Motions for compassionate release are consistent with the Sentencing Commission's policy statements. See U.S.S.G. § 1B1.13. The defendant bears the burden of demonstrating extraordinary and compelling reasons. United States v. Freeman, 617 F. Supp. 3d 386, 389 (E.D. Va. 2022) (Smith, J.), aff'd, 2023 WL 4797316 (4th Cir. July 27, 2023). Second, the court must consider "the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable," and it may only grant the motion if those factors "favor release." United States v. Malone, 57 F.4th 167, 173 (4th Cir. 2023); 18 U.S.C. § 3582(c)(2).

### A. Extraordinary and Compelling Reasons

Defendant requests compassionate release due to his unusually long sentence, rehabilitation, and youth at the time of the offense.[3] ECF No. 270 at 6, 9, 14. The United States agrees that

---

[3] As previously stated, Defendant also requests compassionate release due to his low risk for recidivism. ECF No. 270 at 15-17. Although Defendant characterizes his low risk for recidivism as an extraordinary and compelling circumstance, id., the court considers his recidivism risk when weighing the 18 U.S.C. § 3553(a) sentencing factors at the second stage of its analysis. See, e.g.,

these factors, "collectively qualify as an 'extraordinary and compelling reason' justifying [Defendant's] release." ECF No. 279 at 15. For the reasons discussed below, Defendant has met his burden of demonstrating extraordinary and compelling circumstances to justify his compassionate release.

### 1. Unusually Long Sentence

First, Defendant argues that the court should reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), due to his "unusually long" sentence. ECF No. 270 at 6-8. Under the advisory Sentencing Guidelines, if a defendant has received an unusually long sentence and has served at least 10 years of imprisonment, "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time." U.S.S.G. § 1B1.13(b)(6) (emphasis added).

Defendant and the United States assert, and the court agrees, that Defendant's sentence was unusually long. ECF Nos. 270 at 7, 279 at 16-17. Defendant was sentenced to Life plus seven hundred eighty (780) months imprisonment. ECF No. 41 at 3. "[M]ultiple district courts have held that sentences equal to or shorter than

---

United States v. Hill, 649 F. Supp. 3d 200, 211 (E.D. Va. 2023) (Lauck, J.) (considering a defendant's recidivism risk under the 18 U.S.C. § 3553(a) sentencing factors).

[a] 660-month sentence are 'unusually long.'" <u>United States v. Crenshaw</u>, 2025 WL 618869, at *6 n.6 (E.D. Va. Feb. 26, 2025) (Davis, J.) (citations omitted). Furthermore, Defendant has served well over ten (10) years of his sentence. Thus, the court must decide only whether there was a change in the law and whether that change would produce a "gross disparity" between Defendant's current sentence and "the sentence likely to be imposed" today. U.S.S.G. § 1B1.13(b)(6).

For the reasons discussed below, several changes in the law have resulted in a gross disparity between Defendant's current sentence and the sentence likely to be imposed today. As such, in combination with the other circumstances discussed herein, Defendant's unusually long sentence constitutes an extraordinary and compelling circumstance warranting sentence reduction.

### a. Change in the Law

Three changes in the law apply to this matter. The first concerns the now-advisory nature of the Sentencing Guidelines. The second concerns the First Step Act. The third concerns the Supreme Court's recent focus on youthful offenders' diminished culpability and potential for reform, which is also reflected in the 2024 Sentencing Guidelines amendment under U.S.S.G. § 5H1.1.

First, the Sentencing Guidelines are now advisory. When Defendant was sentenced, judges were generally "bound to impose a sentence within the Guidelines range." <u>United States v. Booker</u>,

543 U.S. 220, 234 (2005).  In Booker, the Supreme Court made the Guidelines "effectively advisory," finding that mandatory application of the Guidelines violated the Sixth Amendment.  Id. at 245.  Although courts must still consider the Guidelines, today sentencing is individualized, and courts may "tailor [a defendant's] sentence in light of other statutory concerns."  Id.

"This Court has found Booker to be a relevant factor in evaluating compassionate release motions."  United States v. Johnson, 2023 WL 5049267, at *6 n.21 (E.D. Va. Aug. 8, 2023) (Trenga, J.) (citing Scruggs, 2021 WL 3115819, at *4).  While a sentence imposed pre-Booker may remain appropriate post-Booker, this is not always the case.  To determine whether a sentence remains appropriate, the court considers whether the sentence imposed was the result of the mandatory nature of the Sentencing Guidelines and whether that sentence would likely be imposed today. See id.; U.S.S.G. § 1B1.13(b)(6).

Second, in 2018, the First Step Act was enacted and clarified the law regarding second or subsequent convictions under 18 U.S.C. § 924(c)(1).  First Step Act, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22 (2018).  Under 18 U.S.C. § 924(c)(1), second or subsequent convictions carry a higher statutory penalty than a first conviction.  18 U.S.C. § 924(c)(1)(A), (C).  Previously, courts could consider multiple convictions under this statute at once and apply the higher statutory penalty to second or subsequent

convictions.    However,  the  First  Step  Act  amended  18  U.S.C.
§ 924(c)(1) and now prohibits charging a defendant with a "second
or subsequent conviction," if the prior conviction was not final
at the time of sentencing.   Pub. L. No. 115-391, § 403, 132 Stat.
5194, 5221-22 (2018).   Here, Defendant's sentences on Counts 32,
34,  and  35  were  sentenced  as  "second  or  subsequent"  convictions
under 18 U.S.C. § 924(c)(1) at the same time as Defendant's first
conviction  on  Count  31.   <u>See</u>  PSR  at  4-5.    This  is  no  longer
permissible.

Third,  the  Supreme  Court  has  noted  the  importance  of
sentencing youthful offenders differently from adult offenders,
due to their diminished culpability and a greater potential for
reform.   <u>See, e.g.,</u> <u>Miller v. Alabama</u>, 567 U.S. 460, 489 (2012);
<u>Graham v. Florida</u>, 560 U.S. 48, 68 (2010); <u>Roper v. Simmons</u>, 543
U.S.   551,   574   (2005)   (recognizing   "[t]he   qualities   that
distinguish  juveniles  from  adults  do  not  disappear  when  an
individual turns 18").   To reflect this change, the Sentencing
Commission amended its Guidelines in 2024, recognizing the need to
consider  a  defendant's  youth  in  all  cases.   <u>Compare</u>  U.S.S.G.
§ 5H1.1 (2024), <u>with</u> U.S.S.G. § 5H1.1 (2023).   Those Guidelines
now state in relevant part:

> A downward departure also may be warranted due
> to the defendant's youthfulness at the time of
> the offense or prior offenses.   Certain risk
> factors  may  affect  a  youthful  individual's
> development  into  the  mid-20's  and  contribute

11

> to involvement in criminal justice systems,
> including environment, adverse childhood
> experiences, substance use, lack of
> educational opportunities, and familial
> relationships. In addition, youthful
> individuals generally are more impulsive,
> risk-seeking, and susceptible to outside
> influence as their brains continue to develop
> into young adulthood. Youthful individuals
> also are more amenable to rehabilitation.

U.S.S.G. § 5H1.1 (2024).

### b. Gross Disparity

Together, these three changes in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed" on Defendant today. U.S.S.G. § 1B1.13(b)(6) (emphasis added). First, as a result of the now-advisory Sentencing Guidelines and the Supreme Court's focus on sentencing of youthful offenders, Defendant would likely be sentenced to far less than Life imprisonment, considering the average sentence length for first degree murder, his criminal history, and his youth at the time of the offenses. Second, as a result of the First Step Act, Defendant would likely be sentenced to far less than an additional seven hundred eighty (780) months imprisonment on Counts 31, 32, 34, and 35 for violations of 18 U.S.C. § 924(c)(1).

In 1998, Defendant was sentenced to Life imprisonment on Counts 2 and 3. ECF No. 41 at 3. These Counts both carry a statutory minimum of twenty (20) years and a maximum of Life imprisonment. PSR at 29. Today, Defendant would likely receive

12

a sentence far short of Life imprisonment due to the advisory nature of the Sentencing Guidelines and his youth at the time of sentencing.    To determine whether a gross disparity exists, the court considers the average sentence length for first degree murder in this Circuit, Defendant's criminal history, and Defendant's youth.

Defendant's sentence and Guidelines were primarily driven by his conviction for Murder in furtherance of a continuing criminal enterprise, under U.S.S.G. § 2A1.1(a) (first degree murder). PSR at 52, 58; see ECF No. 41 at 1.    As this court has noted, "[b]etween 2015 and 2022, Fourth Circuit defendants assessed with a cross reference for first degree murder received an average sentence of 338 months and a median sentence of 360 months." Reed v. United States, 2024 WL 3153221, at *6 (E.D. Va. June 24, 2024) (Jackson, J.).    One-third of those defendants were sentenced to life in prison.    Id.    In the Eastern District of Virginia, the average sentence length was slightly higher.    Defendants in this District "assessed with a Guidelines cross reference for first degree murder between 2015 and 2022 received an average sentence of 398 months and a median sentence of 470 months," and half of those defendants were sentenced to life in prison.    Id.

Although a significant number of defendants are sentenced to life in prison for first degree murder, the court must consider whether Defendant would likely receive a life sentence today.    See

13

U.S.S.G. § 1B1.13(b)(6).  Defendant's youth is a major factor in
this inquiry.  For example, the District Court of Maryland, another
court in this Circuit, noted that it "'routinely impose[s]
sentences within the thirty-year range' for youthful defendants
'involved in drug-related killings.'"  United States v. Ferebe,
2023 WL 6809707, at *3 (D. Md. Oct. 16, 2023) (citing United States
v. Williams, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021)).

More important than sentencing statistics, the court must
consider the "individualized inquir[y]" at the core of the
compassionate release analysis.  United States v. McCoy, 981 F.3d
271, 288 (4th Cir. 2020).  Here, Defendant's criminal history
category was I, the lowest possible category.  PSR at 29.  His
criminal history is sparse and consists only of traffic offenses,
including driving without a license, driving without registration,
and reckless driving.  Id. at 20-21.  Defendant also had a
difficult childhood.  See id. at 23-27.  He was raised by a father
who had a "long history of alcohol abuse" and who was actively
serving a sentence for malicious wounding at the time of
Defendant's trial.  Id. at 25.  The record further shows that
Defendant failed his General Educational Development ("GED") test
and had a "reading grade level [of] 8.1" at the time of sentencing,
demonstrating his immaturity.  Id. at 27.  Consideration of
Defendant's sparse criminal history, difficult childhood, and

14

youth would likely result in a sentence far less than Life imprisonment today.

Furthermore, Defendant would likely be sentenced to far less than the additional seven hundred eighty (780) months imprisonment imposed at the time of sentencing, due to the First Step Act's amendment of 18 U.S.C. § 924(c)(1). See Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22 (2018). In 1998, Defendant was simultaneously sentenced on four Counts under 18 U.S.C. § 924(c)(1). ECF No. 41 at 2. One of these, Count 31, was construed as a first conviction, for which Defendant received the minimum sixty (60) months imprisonment to be served consecutively. Id. at 3. The other three, Counts 32, 34, and 35, were construed as second or subsequent convictions, for which Defendant received the minimum two hundred forty (240) months, each to be served consecutively. Id.

In 2018, the First Step Act amended 18 U.S.C. § 924(c)(1). The law no longer permits courts to sentence "second or subsequent" convictions, if the "first" conviction is not final at the time of sentencing. Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22 (2018). As such, if Defendant were sentenced today on these four Counts, he would likely receive four consecutive sentences of the minimum sixty (60) months imprisonment. See PSR at 29. Thus, instead of an additional seven hundred eighty (780) months

15

imprisonment, Defendant would have likely been sentenced to an additional two hundred forty (240) months imprisonment.

For the reasons stated above, changes in the law concerning the now-advisory Sentencing Guidelines, the sentencing of youthful offenders, and recent amendments in the First Step Act together "produce a gross disparity between the sentence being served and the sentence likely to be imposed" on Defendant today. U.S.S.G. § 1B1.13(b)(6) (emphasis added). In combination with other circumstances discussed herein, Defendant's unusually long sentence constitutes an extraordinary and compelling circumstance warranting sentence reduction.

## 2. Rehabilitation

Second, Defendant argues that the court should reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), due to his rehabilitative efforts over the past two decades. ECF No. 270 at 9. Although rehabilitation alone cannot be an extraordinary and compelling reason for a reduction in sentence, it can be cause for relief when paired with other factors. 28 U.S.C. 994(t); 18 U.S.C. § 3582(c)(1)(A)(i). This court has found that extensive mitigating evidence showing sincere rehabilitation may be "extraordinary and compelling" and may be a "significant factor" in the court's sentence reduction determination. United States v. Ogun, 657 F. Supp. 3d 798, 811 (E.D. Va. 2023) (Smith, J.). Here, like the defendant in Ogun, Defendant "has

clearly made the most of his time in prison." Id.  As such,
Defendant has shown an extraordinary or compelling reason for a
reduction in sentence based on rehabilitation, when paired with
other factors.

Defendant has completed numerous courses offered by the
Bureau of Prisons and has served as a mentor to fellow inmates
while incarcerated. ECF Nos. 270 at 9-14 (Motion), 270-1 at 4-24;
see ECF No. 279 at 18-21 (United States' Response).  In addition
to completing his GED requirements, ECF No. 270-1 at 21, Defendant
has successfully completed the following educational courses:
Anger Management, Mindfulness and Meditation, Basic Cognitive
Skills, the Inside-Out Prison Exchange Program, the F.R.E.E.
program, Reentry Simulation, the Bounce Back Transition Unit
Program, International Instructor Training Institute
Co-Facilitation Training-for-Trainers of the Inside-Out Prison
Exchange Program, and Resource Center Specialist Facilitator
Training.  ECF No. 270-1 at 10-20.  Defendant also served as a
mentor for the Inside-Out Prison Exchange Program, a collaborative
program between college students and incarcerated individuals,
where "[h]e has shown leadership and empathy towards his classmates
that has made the class more productive and fulfilling for all
involved." Id. at 13.

Additionally, Defendant has focused on social and
skills-based rehabilitation.  While incarcerated, Defendant

17

received his forklift certification, participated in numerous crafting classes, completed a course in Basic Arabic, and served as a referee for the prison's flag football teams.  Id. at 22. Defendant provided numerous letters of support from mentee inmates, family, and educators.  Id. at 4-8 (Inmate Letters), at 13 (Educator Letter), at 23-24 (Family Letters).  He also wrote a thoughtful letter expressing his remorse.  Id. at 2-3.  Finally, Defendant has received only one disciplinary infraction over the past twenty-seven (27) years, purportedly for assisting an inmate fix his eyeglasses.  ECF Nos. 270 at 10, 279 at 19.

The United States asserts that "the sheer scope and nature of [Defendant's] rehabilitation seems striking," his "actions over the last twenty-eight years speak more loudly than anything he said at sentencing, or anything he could say today," and his letter "show[s] true remorse."  ECF No. 279 at 18-19.  It notes that Defendant "functionally has two consecutive life sentences," which makes his rehabilitation exceptionally striking, as it was undertaken "without the expectation that he would be release[d] for behaving well."  Id. at 19.  The court agrees.

For the reasons stated above, in combination with other circumstances discussed herein, Defendant has shown that his rehabilitation constitutes an extraordinary and compelling circumstance warranting sentence reduction.

### 3. Youth at the Time of Offense

Third, and finally, Defendant argues that the court should reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), due to his youth at the time of his offenses. ECF No. 270 at 14. A defendant's "relative youth at the time of [his] offenses" is a factor which the court may consider in its "individualized inquir[y]" under Section 3582(c)(1)(A)(i). McCoy, 981 F.3d at 288. When combined with other factors, Defendant's youth at the time of the offenses constitutes an extraordinary and compelling reason warranting a reduction in sentence.

Defendant's youth at the time of the offenses is a relevant factor to be considered by the court on compassionate release. See supra Part III.A.1. In McCoy, the Fourth Circuit stated that a defendant's "relative youth – from 19 to 24 years old – at the time of [his] offenses, [is] a factor that many courts have found relevant under § 3582(c)(1)(A)(i)." McCoy, 981 F.3d at 286. Like the defendants in McCoy, Defendant was between twenty-three (23) and twenty-four (24) years old at the time he committed these offenses. ECF No. 270 at 14-15. Defendant's criminal history, with zero points and a category of I, further demonstrates his immaturity and youth. PSR at 29; ECF No. 279 at 21. The United States agrees, asserting that Defendant's youth is a factor which should be considered by the court, "in tandem with [Defendant's] unusually long and disparate sentence." ECF No. 279 at 22. For

19

the reasons detailed above, and those previously discussed in Part III.A.1, Defendant's youth is an extraordinary and compelling reason which warrants a sentence reduction, when combined with other factors discussed herein.

### B. 18 U.S.C. § 3553(a) Factors

The court now considers the sentencing factors set forth in 18 U.S.C. § 3553(a), as required before granting a compassionate release motion. See United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021). These factors weigh in favor of reducing Defendant's sentence.

The first sentencing factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). At the outset, the court recognizes the seriousness of Defendant's offense conduct. Defendant was a leader in an interstate drug-trafficking conspiracy and used violence to promote it, including participating in intimidation, threats, and shootings, which culminated in the murder of Christian Cleveland. PSR at 9-16. As noted by the United States, Defendant is "unsurprising[ly]" not eligible for immediate release and is subject to a mandatory minimum of four hundred eighty (480) months, which "reflect[s] the gravity" of Defendant's crimes. ECF No. 279 at 25. "[T]his factor, no doubt, weighs against [Defendant]." Ogun, 657 F. Supp. 3d at 811.

But the compassionate release statute "allows a trial court 'to reduce a sentence in "any case" . . . not just in cases involving low-level or non-violent offenses.'" Id. at 811-12 (quoting Kibble, 992 F.3d at 334 (Gregory, C.J., concurring)). The court recognizes the importance of sincere and "extensive efforts at rehabilitation" in its analysis. See id. at 812; supra Part III.A.2. Defendant has taken significant steps toward rehabilitation. He has participated in dozens of classes, acted as a mentor to many inmates, and received only one minor disciplinary infraction over nearly three decades. See supra Part III.A.2. He appears sincere in his efforts to become a different man. In addition to Defendant's rehabilitation efforts, Defendant has strong family support through his mother and sister, and he has crafted a thoughtful release plan. ECF Nos. 270 at 20-21, 270-1 at 23-24. This factor weighs in favor of reducing Defendant's sentence.

Defendant is now fifty-two (52) years old. The court considers Defendant's risk for recidivism, as well as other § 3553(a) factors, including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment and adequate deterrence, and protect the public from further crimes by Defendant. See 18 U.S.C. § 3553(a)(2)(A)-(C). Notably, Defendant remains subject to a mandatory minimum sentence, which reflects the gravity of Defendant's crimes. See

ECF No. 279 at 25.  Defendant's mandatory minimum is four hundred eighty (480) months imprisonment.  PSR at 29.  This means that he may not be immediately released and must serve approximately one more decade in prison.  On balance, these factors support reducing Defendant's sentence from Life imprisonment plus seven hundred eighty (780) months.  See Ogun, 657 F. Supp. 3d at 812 ("[T]he fact that Defendant would still receive a significant sentence even after the requested reduction . . . point[s] in Defendant's favor.") (citations omitted).[4]

Finally, the court considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Both Defendant and his co-defendant, William Lamont Slate, participated in the murder of Christian Cleveland, and both received Life sentences.[5]  PSR at 16; ECF No. 41 at 1; Case

---

[4] The court does have concern about protecting the public, given the nature of Defendant's conduct and the role he played in the crimes in this case.  However, Defendant has been incarcerated for over twenty-seven (27) years, and his rehabilitation efforts and lack of disciplinary infractions, as reflected in the BOP records provided to the court, minimize the court's concern.

[5] Slate received a Life sentence was for his participation in the drug conspiracy, rather than the murder.  Case No. 4:97-cr-41-2, ECF No. 41.  He received one hundred fifty-one (151) months concurrent for his role in the murder.  Id.  Although Slate did not murder Cleveland, he was a major participant.  See PSR at 16, 19.  At one point, Slate told Defendant to "give him the gun because [Slate] would shoot Christian Cleveland if [Defendant] was not going to kill him."  Id. at 16.  Slate also disposed of Cleveland's body.  Id.

No. 4:97-cr-41-2, ECF No. 41. Unlike Defendant, who filed virtually no motions for post-conviction relief in the past two decades, see supra Part I., Slate frequently filed numerous motions and appeals to reduce his sentence.[6] Ultimately, Slate succeeded

---

[6] Slate's numerous motions to reduce his sentence include the following, all of which are located in Case No. 4:97-cr-41-2. On January 15, 2014, Slate filed an Omnibus Motion to Modify Sentence, which was corrected on January 27, 2014, and denied on February 5, 2014. ECF Nos. 121 (Motion), 123 (Corrected Motion), 124 (Order). Slate appealed on February 18, 2014, ECF No. 125, and the Fourth Circuit affirmed, ECF No. 131, 132. On February 25, 2019, Slate filed a Motion for Resentencing. ECF No. 156. On May 23, 2019, Slate filed a first Motion for Compassionate Release. ECF No. 172. On June 6, 2019, the court granted Slate's Motion for Resentencing and reduced Slate's sentence to four hundred eighty (480) months imprisonment. ECF No. 175 (Resentencing Order). Slate appealed the court's Resentencing Order on June 14, 2019. ECF No. 178. On October 17, 2019, the court denied Slate's first Motion for Compassionate Release. ECF No. 190.

On April 23, 2020, Slate filed a second Motion for Compassionate Release, which was struck by the court due to defect, but was refiled by Slate on May 20, 2020. ECF Nos. 191 (Defective Second Motion), 192 (Striking Order), 193 (Second Motion). On June 11, 2020, the court denied Slate's second Motion for Compassionate Release. ECF No. 195. On February 4, 2021, Slate filed a third Motion for Compassionate Release, ECF No. 216, which was denied on April 30, 2021, ECF No. 229. On May 17, 2021, Slate filed a Motion for Reconsideration of his third Motion for Compassionate Release, which was denied on June 9, 2021. ECF Nos. 231 (Reconsideration Motion), 233 (Order Denying). On December 6, 2021, Slate filed a fourth Motion for Compassionate Release, which was denied on April 13, 2022. ECF Nos. 235 (Motion), 245 (Order Denying). Finally, on July 7, 2022, the Fourth Circuit vacated the court's Resentencing Order dated June 6, 2019 and remanded for further proceedings. ECF Nos. 246, 247. On October 10, 2022, Slate filed a Supplemental Motion for Resentencing through counsel. ECF No. 257. On April 28, 2023, the court entered an Order granting the Supplemental Motion and reducing Slate's sentence to time served, as of May 15, 2023. ECF No. 265.

in reducing his sentence to time served as of May 15, 2023. Case No. 4:97-cr-41-2, ECF No. 265. As such, Defendant is the only co-defendant still serving a Life sentence. Defendant's culpability is greater than Slate's; however, it does not warrant such a large discrepancy between the two sentences. The current sentence disparity between Defendant and Slate, combined with the other 18 U.S.C. § 3553(a) factors discussed herein, weighs in favor of reducing Defendant's sentence.

"When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." Concepcion v. United States, 597 U.S. 481, 486 (2022) (citing Pepper v. United States, 562 U.S. 476, 492 (2011)). Defendant appears to be a changed man. He has come a long way from the individual that he was at the time he committed these crimes. The fact that Defendant will remain in prison for approximately one more decade due to the mandatory minimum terms in this case appropriately addresses both the severity of his crimes and the extraordinary and compelling circumstances described herein.

For all the reasons discussed herein, the court **FINDS** that a sentence reduction is appropriate. The court hereby **REDUCES** Defendant's sentence from Life imprisonment plus seven hundred eighty (780) months to four hundred eighty (480) months imprisonment.

24

## IV. CONCLUSION

Defendant has shown that extraordinary and compelling reasons exist, which warrant a reduction in sentence after "consider[ing] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, the court **FINDS** that a reduction in Defendant's sentence is warranted. The court **GRANTS** Defendant's Motion, ECF No. 270, and **REDUCES** his total sentence of Life plus seven hundred eighty (780) months to the mandatory minimum of four hundred eighty (480) months imprisonment.

As such, Defendant's sentences on Counts 2 and 3 are **REDUCED** from Life to two hundred forty (240) months imprisonment; his sentences on Counts 7, 8, 11, 12, 13, 15, 23, and 26 are **REDUCED** from four hundred eighty (480) to two hundred forty (240) months imprisonment; and his sentence on Count 33 is **REDUCED** from three hundred (300) to two hundred forty (240) months imprisonment. All the above reduced sentences shall run concurrently. Additionally, Defendant's sentences on Counts 32, 34, and 35 are each **REDUCED** from two hundred forty (240) months to sixty (60) months imprisonment, each to run consecutively to each other and all other sentences, for a total of one hundred eighty (180) months consecutive imprisonment. The court does not reduce Defendant's sentence on Count 31, which remains sixty (60) months imprisonment, to be served consecutively to all other counts. Thus, Defendant's

sentences total four hundred eighty (480) months imprisonment. In all other respects, the court's Judgment entered January 27, 1998, ECF No. 41, remains in full force and effect.

The Clerk is **DIRECTED** to send a copy of this Opinion to Defendant, the United States Attorney at Newport News, and the Bureau of Prisons.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

July 7 , 2025